## 9330

### DUTTON v. ATLANTIC COAST LINE R. CO. *ET AL.*

(88 S. E. 263.)

1. APPEAL AND ERROR—TRIAL—REVIEW—DISCRETION OF COURT—IRRELEVANT EVIDENCE.—The relevancy of the testimony is largely left to the discretion of the trial Judge, and his ruling thereon will not be reversed on appeal, unless it clearly appears that his discretion was erroneously exercised to appellant's prejudice.

2. DEATH—DEPENDENCY—EVIDENCE.—In an action by the administratrix of a deceased railroad employee under the Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, secs. 8657-8665]), evidence that the employee left no property and no insurance, and that his wife and children had no property, is relevant, as tending to show that they were dependent on him.

3. APPEAL AND ERROR—HARMLESS ERROR—IMMATERIAL EVIDENCE.—The admission of evidence that persons representing themselves to be defendant's agents, but not shown to have been authorized, called on the widow of a deceased employee, is immaterial, where all evidence as to an offer of compromise was excluded.

4. TRIAL—ADMISSIBILITY OF EVIDENCE—FOUNDATION.—In an action for the death of a railroad employee who, the railroad contended, violated rules established for his protection, evidence of a witness as to the obedience to those rules is not objectionable because the showing was insufficient that the rules had been violated frequently and repeatedly with the acquiescence of the company so as to show waiver, since the sufficiency of the showing was for the jury.

5. TRIAL—DIRECTED VERDICT—"SCINTILLA OF EVIDENCE."—The "scintilla of evidence" which will authorize the trial Court to refuse to direct a verdict against the plaintiff is such evidence as is sufficient to warrant a reasonable jury in rendering a verdict on it.

6. MASTER AND SERVANT—INJURIES TO SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—DIRECTED VERDICT.—The rule of the State Courts as to direction of a verdict applies to an action in them under the Federal Employers' Liability Act.

7. APPEAL AND ERROR—REVIEW—RULINGS ON EVIDENCE—WRONG REASONS.—The fact that the trial Judge, in refusing a directed verdict, used the expression, "scintilla of evidence," in too restricted a sense is not reversible error, where there was sufficient evidence to justify the refusal under the correct rule, since a ruling to which a party is entitled will ·not be denied because a wrong reason was assigned therefor.

8. TRIAL—ARGUMENT—INFERENCES—FAILURE TO TESTIFY.—In an action against a railroad company and several of its employees for damages for the death of a car inspector, plaintiff's attorney can argue as to the inferences to be drawn from the failure of one of the employee defendants to testify, though he was in Court all during the trial subject to either party.

9. APPEAL AND ERROR — REVIEW — DISCRETION OF COURT — CONDUCT OF TRIAL.—The conduct of the trial is left largely to the discretion of the presiding Judge, whose rulings will not be reversible error unless his discretion was erroneously exercised.

10. MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTIONS—WAIVER OF RULE.—In an action for the death of a car inspector while working under a car not protected by blue lights, as required by the rules, a charge that if the train crew knew that the rule had not been enforced, and that workmen were in the habit of going under the cars without displaying blue lights, and knew that workmen were liable to be under it, it was their duty to see that no one was thereunder before moving it, but not charging that a failure of duty in that respect would be negligence, is not erroneous.

11. TRIAL—INSTRUCTIONS—MODIFICATION—INVADING PROVINCE OF JURY.— The modification of a requested charge that if the deceased employee went between the cars after being warned that they were about to be moved he was negligent, by inserting the condition that the jury find that his act was obviously dangerous, was proper, since to charge that the act itself was negligence would be to invade the province of the jury.

FOOTNOTE.—As to failure to call employee as witness raising presumption against party to action, see notes in 31 A. & E. Ann. Cas. 1914a, 917. As to comment by attorney on failure of party to testify, see notes in 16 A. & E. Ann. Cas. 309.

2—104

Before RICE, J., Sumter, November, 1914.    Affirmed.

Action by Ella Dutton, as administratrix of the estate of
Lee Dutton, deceased, against the Atlantic Coast Line Rail-
road Company and others.    Judgment for the plaintiff
against the named defendant, and it appeals.

The following are the exceptions referred to in the
opinion:

1. His Honor erred, it is submitted, in admitting, over
the objection of defendant-appellant, testimony of plaintiff
as to the financial condition of her intestate at the time of his
death aside from the income derived from the application
of his time and labor, because only the loss directly caused
through the death of intestate could form a basis of recov-
ery here, and the evidence, adduced over defendant's objec-
tion, could tend only to elicit sympathy on the part of the
jury to defendant's prejudice; the questions, objections,
ruling, and evidence being as follows: "Q. Had he any other
property at the time of his death?    Mr. Clifton: I object.
Q. Don't answer until I get through, and the Judge rules.
Did he have any other property at the time of his death other
than the salary that he was earning, to support his family?
Mr. Clifton: Any other property is not relevant.    They
have got them charged with procuring the young man's
death through a negligent act, and whether plaintiff's intes-
tate was rich or poor is immaterial.    Court: Go on.    The
objection is overruled.    Q. Did he have any other property
at the time of his death?    Did he have any property at all
at the time of his death?    A. No, sir."

2. His Honor erred, it is submitted, in admitting, over
the objection of defendant-appellant, testimony of plaintiff
as to what, if any, insurance was held by her intestate at the
time of his death, because such evidence was not material to
any issue in the cause and was sought to be elicited, and was
elicited, for the sole purpose, or at least it could only have

had the effect, of exciting sympathy in the minds of the jury
to the prejudice of defendant; the questions, objections,
ruling and evidence being as follows: "Q. How much insur-
ance did he leave, if any? Mr. Clifton: All these questions
objected to. * * * Court: Upon the same ground? Mr.
Clifton: Well, we object, and upon the additional ground
that the statute provides for an action for those dependent
upon him, and it is not essential or material to establish his
worldly possessions, or the absence or presence of them.
Court: Now, Mr. Jennings. Q. Yes; I understood the rul-
ing. Court: Yes, sir. Q. How much insurance did he
leave, if any, at the time of his death? A. $184. Q. You
had to bury him, did you not? A. Yes, sir. Q. You paid
the burial expenses? A. I did. Mr. Clifton: We object
to that on the ground of irrelevancy. Q. In order to show
that it took practically all the insurance to lay him away
after they had killed him. Mr. Clifton: We object to coun-
sel stating the evidence. Court: Yes, sir; the objection
overruled. Q. Of the $184 insurance he left, which he left,
how much of that did it take to put him away, as near as you
can remember? A. As well as I remember, it was $94."

3. His Honor erred, it is submitted, in admitting, over
the objection of defendant-appellant, evidence of plaintiff
as to what property, if any, she owned at the time of the
death of her intestate, because only the loss directly caused
by the death of her intestate could form a basis of recovery,
and the evidence, admitted over defendant's objection, could
tend only to excite sympathy on the part of the jury to
defendant's prejudice; the questions, objections, ruling and
evidence being as follows: "Q. Did you have any property
of your own at the time of his death? A. No, sir. Mr. Clif-
ton: We object; that is immaterial. Court: Go on, I will
overrule the objection. Q. Have you acquired any since
his death? A. No, sir. Q. Did these two children have
any at the time of his death? Did they have any property

of their own? A. No, sir. Q. Have they any now? A. No, sir."

4. His Honor erred, it is submitted, in admitting, over the objection of defendant-appellant, evidence of plaintiff as to the visit or visits paid her, and the conference or conferences had with her, after the death of her intestate and with reference to such death, such evidence being incompetent and inadmissible because: (1) No act or declaration on the part of any so-called agent could bind the defendant unless it was shown (a) to have been previously authorized by it, or (b) to have been subsequently ratified, and there was no competent evidence of either authorization or ratification; (2) because the evidence was entirely irrelevant to any issue in the case, and, therefore, was incompetent, except as tending to show some attempt, effort, offer, intention, or desire to effect a compromise of the cause of action, if any, and as such it was incompetent and inadmissible; and the admission of such evidence could tend only to influence and prejudice the minds of the jury and to indicate to them some degree of admission of liability on the part of and by the defendant.

5. His Honor erred, it is submitted, in admitting, over the objection of defendant-appellant, testimony of the witness, George P. McKagen, as to the failure to use blue signals in accordance with the rules in evidence, there being no sufficient showing of frequent and repeated violation of the rules with the knowledge and acquiescence of the defendant such as would show waiver of the rules.

13. His Honor erred, it is submitted, in overruling the motion for direction of verdict in favor of defendant-appellant made at the close of all the evidence; whereas, he should have granted the motion and directed the jury to return a verdict in favor of this defendant upon the grounds and for the reasons urged in support thereof, as follows: (1) There is no evidence of wilfulness showing a right of recovery as given by the Employers' Liability Act of Congress. (2)

No right of recovery for wilfulness is given by the Employers' Liability Act of Congress, and evidence of wilfulness, if any, therefore, is irrelevant. ` (3) There is no evidence of negligence proximately causing intestate's death. (4) The proximate cause of accident resulting in death of plaintiff's intestate was his own negligence. (5) There is no sufficient · evidence of negligence proximately causing the death of plaintiff's intestate.

14. His Honor erred, it is submitted, in holding that the scintilla doctrine applies in an action brought under the Employers' Liability Act of Congress, and in refusing to direct verdict in favor of this defendant because in his consideration of the case there was a scintilla of evidence, making it necessary to submit the case to the jury; whereas, there was no sufficient evidence to support a verdict for plaintiff, and his Honor should have so directed the jury.

15. His Honor erred, it is submitted, in permitting the attorneys for plaintiff to argue to the jury inferences detrimental and prejudicial to this defendant, over defendant's objection, from the failure of defendant to call M. H. Hodge, one of its codefendants, as a witness in its behalf, it appearing that Hodge was present in the court room during the trial equally accessible to either plaintiff or this defendant.

16. His Honor erred, it is submitted, in permitting counsel for plaintiff to argue to the jury inferences detrimental to this defendant from fact, appearing from evidence admitted over defendant's objection, that persons representing, or claiming to represent, this defendant visited plaintiff, and had a conference or conferences with·her, after the death of her intestate and with reference to such death; such inference sought to be suggested to the minds of the jury being for the purpose only of showing some attempt, effort, offer, intention, or desire on the part of defendant to effect a compromise of the cause of action, if any.

17. His Honor erred, is is submitted, in permitting counsel for plaintiff, after the ruling of the Court, to comment to the jury upon the evidence, admitted over defendant's objection, of visits paid to plaintiff and conferences had with her by persons representing, or claiming to represent, the defendant-appellant, and it was error sufficient to vitiate the verdict subsequently rendered for counsel to make such comments, suggesting and arguing by inference to the jury that such visits and conferences were had for the purpose of bringing about a compromise of the cause of action, if any, such comments being made after the ruling of the Court, and deliberately in defiance of such ruling, the particular occurrence referred to herein appearing in the record as follows: "Mr. Clifton: I object to inferences being argued except as to his being there. Court: Or of any compromise or settlement. Mr. Jennings: I will argue this: If the railroad's witnesses had been so hard-hearted as to stop and get statements from Hodge while the helpless, mangled, torn-up and still-breathing body was under the railroad train, then they would stop in instances of that kind to get statements for the railroad company. Then I ask you why did they become so sympathetic later and have his district attorney to go down there and have a conference with her in her poor little hut down side of the railroad track? Did he go there to have prayers with her, and console with her in her sorrow and distress? Mr. Clifton: All this is under our objection."

18. His Honor erred, it is submitted, in charging the jury as follows: "If you find that, as alleged in the complaint, that was done for months; that the rule was not enforced upon the yard; that it was known to the employees in charge of this train that the blue light rule, this rule 26, had not been enforced; and that workmen were in the habit of going under the cars without displaying the blue lights; and if you find that those in charge of this train knew that— then it was their business before moving that train, if they knew that this train was being made up, and the workmen

likely to be under it, it was their business to see that no one was in the way before they moved that train out"—in that: (1) Notice to workmen in charge of train on this occasion being coupled to would not be sufficient notice to master to constitute a waiver and abrogation of the blue signal rule, because notice to trainmen operating between other junctional points, merely passing through Sumter yard, would not be notice to master, and notice to and acquiescence of trainmen such as those referred to in this portion of the charge would not be sufficient to show notice to and acquiescence on the part of the master; (2) there was no evidence here that the trainmen referred to in this portion of the charge had any sufficient notice of failure on the part of workmen on Sumter yard to observe the requirements of the blue signal rule; (3) in charging that, with knowledge of certain facts, it was the positive duty of the servants in charge of the moving of the train, resulting in the death of plaintiff's intestate, to have seen that no one was in the way before they moved the train out, his Honor charged upon the facts, in violation of the constitutional inhibition, because, in the view most favorable to plaintiff, his Honor should have left it to the jury to say whether, in view of such knowledge found from the evidence to have been possessed by these servants, they should, under the circumstances as shown from all the evidence, have ascertained on this occasion if any workmen were beneath the cars or otherwise in a position of danger, and if it was negligence for them to have failed to exercise such precaution.

20. His Honor erred, it is submitted, in refusing to charge the jury as requested by defendant-appellant's counsel at the conclusion of the charge, and in modifying such request, the request and modification being as follows: "Mr. Clifton: We think we would be entitled to have your Honor charge this. Your Honor has explained to the jury the necessity of warning, the blue lights and notices, and we think we would be entitled, under the evidence, to have the

jury charged that if they find that although the blue lights were not used or provided, or that no warning was given deceased, as alleged in the complaint, still if they find from the evidence that Dutton was warned that the train or engine was backing, and with such warning he went between the cars, then in such event he cannot recover; that if they find that the defendant, Hodge, notified the deceased, Dutton, of the approach of the train, and warned him of it, that that supersedes the necessity of any warning, and would necessarily make him the cause of his own death. Court: Suppose you write that out. (Stenographer writes out and Mr. Clifton reads the following: 'That if the jury find that although blue lights were not used or provided, or that no warning was given the deceased, Dutton, as alleged in the complaint, still if they find from the evidence that Dutton was warned that train or engine was backing, and with such warning he went between the cars, then in such event he cannot recover.') Court: I charge you that, but with the modification—I can't charge that absolutely, if it was a dangerous thing to do. Now, it may have been, and of that you are the judges, that the cars—a man could go between the cars and couple without incurring a great deal of danger in this case. All that is for you; but, if it was obviously dangerous in this case, and so much so that a man of ordinary prudence and caution would not have gone in there, then he can't recover; but if it was not such a situation of obvious danger, but it was made so by the act of some one engaged in coupling the train, and such act caused his death or contributed to his death, then he can recover. Now, that's all." This was error, prejudicial to this defendant, because the request as submitted embodied a sound proposition of law applicable to the case, and his Honor should have so charged the jury; and it was further error for his Honor to charge the jury as he did in his modification of the request, because there was no evidence in the case which would support the inference that the position assumed by deceased beneath the

cars was not a position of danger, but, on the contrary, all the evidence showed that under the circumstances existing at the time the deceased must have known, and the jury must have so found, that the place was one of danger and not one of safety.

*Messrs. P. A. Willcox* and *S. M. Wetmore,* for appellant, submit: *Testimony as to financial condition of intestate was inadmissible:* 228 U. S. 173; Richey, Employers' Liability Act, pp. 108, 109; 227 U. S. 59. *And its admission was reversible error:* 42 S. C. 21. *Declarations of agent inadmissible to show agency:* 72 S. C. 255; 17 S. C. 139; 44 S. C. 81; 89 S. C. 470; 97 S. C. 150; 5 S. C. 358; 17 S. C. 520; 62 S. C. 129. *Offer to compromise inadmissible in evidence:* 1 Greenleaf Ev., sec. 192, pp. 321, 322; 16 Cyc. 946, 947, 948; 10 S. C. 304; 36 S. C. 65; 45 S. C. 184; 56 S. C. 96; 57 S. C. 358. *Evidence insufficient to show waiver of rules:* 90 S. C. 133; 71 S. C. 303; 77 S. C. 378; 75 S. C. 267. *As to intestate's negligence, although the servant may have been directly commanded or urged to undertake the work from which the injury resulted, he cannot claim an indemnity where the danger to be encountered was at once so obvious and so serious that no prudent man would have incurred it. That is to say, the order must, if it is to serve as a justification, be in a matter with regard to which the servant has a right to rely on the superior judgment of the master:* 4 Labatt's Master and Servant, pp. 3949, 3950; 76 Pa. 389; 18 Am. Rep. 412; 151 N. C. 76; 134 Am. St. Rep. 974; 4 L. R. A. (N. S.) 73; 141 Fed. 913; 82 S. C. 542. *When verdict for defendant may be directed:* 215 U. S. 87; 109 U. S. 485; 164 U. S. 301. *Improper remarks of counsel:* 77 S. C. 404.

*Messrs. John H. Clifton, Mark Reynolds* and *Lucian W. McLemore,* also for appellant, submit: *As to when testimony presents issue for jury:* 99 S. C. 404. *Observance of rules:*

89 S. C. 527. *As to alleged waiver of rule:* 82 S. C. 548; 78 S. C. 352; 118 Ga. 282; 45 S. E. 276; 111 Va. 499; 69 S. E. 323; 102 Minn. 41; 112 N. W. 1067; 12 L. R. A. (N. S.) 754. *Proximate cause:* 78 S. C. 374; 96 S. C. 228; 89 S. C. 15; 34 S. C. 537; 101 S. C. 517. *Admission of evidence of financial condition of deceased and beneficiaries:* 227 U. S. 59 and 145; 228 U. S. 173; 96 Ga. 521; 23 S. C. 414; 122 Cal. 563; 55 Pac. 577; 198 Ill. 313; 65 N. E. 74; 113 Ga. 842; 39 S. E. 551; 68 Neb. 826; 96 N. W. 1007; 88 Mo. 239; 57 Am. Rep. 382; 95 Tex. 5; 64 S. W. 923; 93 Am. St. Rep. 804; 55 L. R. A. 869. *Declarations of agents inadmissible:* 19 S. C. 373; 27 S. C. 67; 53 S. C. 451; 56 S. C. 145; 67 S. C. 362; Best, Ev. (10th ed.), sec. 251; Jones, Ev. (2d ed.), secs. 137, 138. *Admissibility of attempt to effect compromise:* 10 S. C. 304; 36 S. C. 69; 45 S. C. 184; 56 S. C. 104; 57 S. C. 361; 88 S. C. 453. *Remarks of counsel:* 92 S. C. 236. *Comments during argument to jury on failure of appellant to use as a witness a party equally accessible to both parties:* 38 Cyc. 1491; 9 Wash. 120; 37 Pac. 341; 72 Vt. 51; 47 Atl. 108; 79 Vt. 334; 211 Mass. 552; 112 Ala. 1; 136 Mich. 341; 27 Conn. 318; 142 S. W. 44; 136 Mich. 660; 102 S. W. 690. *Charge on facts:* 51 S. C. 453; 29 S. E. 206; 63 S. C. 494; 41 S. E. 765; 71 S. C. 156; 50 S. E. 773.

*Messrs. L. D. Jennings* and *R. D. Epps,* for respondent, submit: *Admission of evidence as to financial condition of plaintiff:* 111 Mo. 506; 33 Am. St. Rep. 547. *Harmless:* 63 S. C. 559. *Discretionary:* 72 S. C. 350; 76 S. C. 275; 98 S. C. 121 and 289; 75 S. C. 128, 134, 203 and 339. *Bears on dependency:* 98 S. C. 197; 228 U. S. 173. *Failure to object to testimony at proper time:* 59 S. C. 232; 86 S. C. 8. *Testimony as to agency:* 78 S. C. 143; 93 S. C. 97. *Sufficiency of evidence to present an issue for the jury:* 98 S. C. 42; 160 N. C. 196; 99 S. C. 417, 421. *Remarks on failure to call witness:* 14 Rich. L. 237; 35 S. C. 197; 98

S. C. 229; 40 L. R. A. 80.    *Waiver or abrogation of rules:*
92 S. C. 108 and 557.    *Apportionment of verdict among*
*beneficiaries:* 59 U. S. L. Ed. 865.

March 14, 1916.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an action for damages, alleged to have been sus-
tained, through the wrongful acts of the defendants, in
causing the death of plaintiff's intestate, who was an
employee of the defendant company, and was engaged in the
work of car inspector in the yard of the company at Sumter,
S. C., when he was killed.    The issues raised by the plead-
ings are thus succinctly stated by appellant's attorneys:

"On or about the 13th day of October, 1913, the said
employee, while inspecting cars of an interstate train, went
between two of said cars, and was killed almost instantly
by the car running over him.    The wife of said deceased
employee, having qualified as administratrix of his estate,
has brought this action for the benefit of herself and her
two minor children; and, inasmuch as the deceased was an
employee of the defendant company, and engaged in inter-
state commerce, the Federal Employers' Liability Act
applies.    The cause of action relied on in the complaint is
based: (1) On alleged acts of the engineer in charge of the
train which ran over deceased, 'in driving said cars back
very suddenly and without any warning,' knocking him
down, etc.; (2) on the alleged failure of duty on the part of
the defendant company to provide 'a sufficient number of
blue lights or lanterns, so that same might be placed on the
end of cars or trains, beneath or between which employees
might find it necessary to go, in the discharge of their duty,'
which failure it is alleged, was continued for several months
before the accident complained of, and with full knowledge
of defendant; (3) on the alleged failure of Hodge, a code-
fendant and *alter ego* in immediate control of deceased, to

warn deceased of the approaching train that ran over him; (4) on the alleged negligence of the conductor of said train, in allowing said train to be backed without warning; (5) on the alleged negligence of the engineer of said train, in backing said train in response to a signal, which, it is alleged, was given by some employee of the defendant company to another train. The answer sets up: First, a general denial; and, second, the plea of contributory negligence of the deceased, in failing to protect himself by proper signals, before going beneath said car, and by failing to attend to his duties in preparing the said cars for departure, until immediately before the time for their departure; third, in going under or between said cars when he knew that he was not being protected by the signals provided for by the rules; when he knew the engine and cars were being backed on the track for the purpose of being coupled to the cars, under which he placed himself."

The case was tried by the Court and a jury, and a verdict rendered in favor of the plaintiff, against the defendant-appellant only, in the sum of $12,000, apportioned among the widow and her two children in equal amounts, to wit, $4,000 each. The defendant company appealed upon numerous exceptions, which will be reported, except the sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, nineteenth, and twenty-first (some of the questions presented by this exception were abandoned, and the others argued under other exceptions), twenty-second and twenty-third.

The complaint, in the first instance, alleged a cause of action under the State statute, but was amended during the trial by alleging that the defendant company and plaintiff's intestate were engaged in interstate commerce, at time of the injury.

First, second, and third exceptions. These exceptions will be considered together. They assign error on the part of his Honor, the presiding Judge, in ruling that testimony was admissible for the purpose of showing that the intestate

did not have any property at the time of his death other than his salary as an employee, and no insurance, with which to support his family, and that neither the widow nor the children had any property at the time of his death.

The only ground of objection to the admissibility of the testimony was that it was irrelevant. The relevancy of the the testimony is left, in large measure, to the discretion of the presiding Judge, and his ruling will not be reversed on appeal, unless it clearly appears that his discretion was erroneously exercised, to the prejudice of the appellant's rights, which has not been made to appear in this case.

There is another reason why these exceptions can not be sustained. It was incumbent on the plaintiff to show that she and the children were dependent upon the intestate.

"The damages recoverable are limited to such loss as results to them (the dependent relatives named in the statute) because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained." *Gulf R. R.* v. *McGinnis,* 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785.

The financial condition of the employee and the other members of his family tended to show whether they were dependent upon him or he dependent upon them for support. If the head of the family has only small means of support, this fact tends to increase the probability that the other members of the family will be compelled to depend upon their own exertions for a livelihood. If the appellant's attorneys had interposed the objection, to the admissibility of the testimony, that it could not be considered by the jury as an element of damage, and the presiding Judge had ruled that it was competent for such purpose, quite a different question would be presented from that now under consideration.

Fourth exception.   It is immaterial, whether those who visited and conferred with the plaintiff, relative to her husband's death, were authorized or not, for the reason that there was no testimony tending to show an offer of compromise.   His Honor, the presiding Judge, ruled throughout the trial that such testimony was not competent, and none was introduced, contrary to his ruling.

Fifth exception.   It was for the jury to determine whether the testimony was sufficient to show waiver of the rules.

Thirteenth exception.   Wilfulness is not an element under the Federal statute, nor did his Honor, the presiding Judge, so rule.   He charged the jury fully that negligence was the basis of recovery under the Federal statute.   The question whether there was any testimony tending to show negligence on the part of the appellant was properly submitted to the jury; and the question whether the death of plaintiff's intestate was caused by negligence on his part was also properly submitted to the jury.

Fourteenth exception.   In refusing the motion to direct a verdict in favor of the defendants, his Honor, the presiding Judge, said: "I can't say there is not a scintilla of evidence to go to the jury."   This statement was not addressed to the jury, and it cannot be successfully contended that they were misled.   The words, "scintilla of evidence," have been interpreted by this Court to mean such evidence as is sufficient to warrant a reasonable jury in rendering a verdict upon it.   *Howell* v. *Railway,* 99 S. C. 417, 83 S. E. 639.   In that case the Court said:

"We have frequently held that a nonsuit should be granted or the verdict directed, unless the evidence is sufficient to warrant a reasonable jury in basing a verdict upon it, and we have held, in cases too numerous to mention, that when the evidence is susceptible of only one reasonable inference, the Court must declare what that inference is, as matter of

law.   Any other rule would substitute the decision of the trial Judge for that of the jury in the trial of issues of fact."

This case and the others from which we shall quote also show that the rule which prevails in the State Court is applicable when the action is brought under the Federal statute.

"Nor do we agree that, in the administration of the Federal statute, the State Courts must apply a different rule of procedure from that which obtains in the administration of State laws.   The Federal statute does not so require, and, in the absence of anything therein to the contrary, it will be presumed that Congress intended that it should be administered by the State Courts, as the laws of the State are therein administered."   *Howell* v. *Railway,* 99 S. C. 421, 83 S. E. 641.

"The Federal Employers' Liability Act is general in its terms, and makes no specific regulation as to the quantity, quality, and methods of proof of negligence, and, in the absence of any such regulation, will conform, as near as possible, to the State law in the manner and mode of trial and the rules of pleading, evidence, and law applicable thereto."   *Bennett* v. *Railway,* 98 S. C. 42, 79 S. E. 710; *Keonnecke* v. *Railway,* 101 S. C. 86, 85 S. E. 374.

"There can, of course, be no doubt of the general principle, that matters respecting the remedy—such as the form of the action, sufficiency of pleadings, rules of evidence, and the statute of limitations—depend upon the law of the place where the suit is brought.   *McNiel* v. *Holbrook,* 12 Pet. 89, 9 L. Ed. 1011."   *Central Vt. R. R.* v. *White,* 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433.

The rule that prevails in the Federal Courts is as follows:

"It is the settled rule of this Court that when the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the Court is not bound to submit the case to the jury, but may direct a verdict for the defendant. * * * And

it has recently been decided by the House of Lords, upon careful consideration of the previous cases in England, that it is for the Judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred; and it is for the jury to say whether from those facts when submitted to them, negligence ought to be inferred." *Randall* v. *Railroad,* 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003.

It will thus be seen that the rule prevailing in this State and in the Federal Court is practically the same as stated by the case just cited.

In the case under consideration, there was sufficient testimony for a reasonable jury to draw the inference of negligence on the part of the company.

Even if it should be conceded, that his Honor, the presiding Judge, used the word "scintilla" in too restricted a sense, this would not constitute reversible error, for the reason that it has been frequently held that a right to which a party is entitled, will not be defeated, on the ground that erroneous reasons are assigned in granting it.

Fifteenth exception. The case of *Railroad* v. *Partlow,* 48 S. C. L. (14 Rich.) 237, shows that this exception cannnot be sustained.

Sixteenth and seventeenth exceptions. The conduct of the trial must be left, in large measure, to the discretion of the presiding Judge, and his rulings will not constitute reversible error, unless his discretion was erroneously exercised, which has not been made to appear.

Eighteenth exception. His Honor, the presiding Judge, simply defined the duty of the company under the circumstances mentioned in the exception, but did not charge that a failure of duty in that respect would constitute negligence. Furthermore, it has not been made to appear, even if there was error, that it was prejudicial to the rights of the apellant.

Twentieth exception. His Honor, the presiding Judge, could not charge the jury that certain facts would constitute negligence, without invading their province. *Wood* v. *Manufacturing Co.,* 66 S. C. 482, 45 S. E. 81; *Weaver* v. *Railway,* 76 S. C. 49, 56 S. E. 657; 121 Am. St. Rep. 934.

Judgment affirmed.